UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JUAN M. BENITES-RODRIGUEZ,<br>    Petitioner,<br><br>    v.<br><br>ALBERTO GONZALEZ, ET AL.,<br>    Respondents. | CIVIL ACTION NO.<br>3:04cv1961 (SRU) |

### MEMORANDUM OF DECISION

The petitioner, Juan M. Benites-Rodriguez, is a native and citizen of Peru who entered this country illegally. When served with a notice of removability, Benites-Rodriguez applied for suspension of deportation under the former 8 U.S.C. § 1254 ("suspension of deportation"), and cancellation of removal under Section 240A(b) of the Immigration and Naturalization Act ("INA"), codified 8 U.S.C. § 1229b(b)(1) ("cancellation of removal"). An immigration judge denied petitioner's application. The BIA upheld the immigration judge's decision. Benites-Rodriguez then filed a petition for review in the Court of Appeals for the Second Circuit. That court transferred the petition to this court with instructions to construe petitioner's submissions as a petition for habeas corpus brought pursuant to 28 U.S.C. § 2241 and to address whether the BIA erred in failing to consider whether petitioner was entitled to relief under the former suspension of deportation provision. Because the Immigration and Naturalization Service ("INS")[1] commenced removal proceedings against Benites-Rodriguez after Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), which repealed the former suspension of deportation provision, petitioner was never eligible for relief

---

[1] I will use the term INS to refer both to the former Immigration and Naturalization Service and to the current Bureau of Immigration and Customs Enforcement.

under that statute.  Consequently, the immigration judge and the BIA did not err in failing to consider whether Benites-Rodriguez was entitled to relief under the former statute.  In addition, the immigration judge correctly determined that Benites-Rodriguez is not eligible for cancellation of removal.  Accordingly, the petition for a writ of habeas corpus is denied.

**I.      Background**

The relevant facts in this case are set forth in the immigration judge's oral decision and are essentially undisputed.  In October 1989, Benites-Rodriguez entered the United States and came directly to Stamford, Connecticut.  He stated that he has never departed the country since that time.  Sometime in 1990, he purchased a falsified Social Security card to obtain work.  He currently works for a painting company and he has testified that he would not be able to find a comparable job in Peru.  Benites-Rodriguez has a large family in Peru, to whom he sends approximately $400 to $500 per month.

Benites-Rodriguez also has two children who currently reside in the United States.  His older child, Christian, was born in Peru and lives with Benites-Rodriguez in Stamford.  Christian is also illegally in the United States.  Benites-Rodriguez's younger child, Andres, was born out-of-wedlock in the United States.  Andres lives with his mother in Norwalk, although Benites-Rodriguez does not know their exact whereabouts.  Andres' mother sued Benites-Rodriguez in family court to force Benites-Rodriguez to pay child support.  The court ordered Benites-Rodriguez to pay $25 per week.  Prior to his immigration hearing, Benites-Rodriguez had not seen Andres in approximately one-and-a-half years, because Andres' mother does not want him to visit Andres.  Andres' mother has married and has another child with her husband.

Benites-Rodriguez did marry a United States citizen in November 1993.  They split up,

however, and he does not know his former wife's exact whereabouts.  She left their family home in December 2000.   He has no children with his former wife.  The period in which Benites-Rodriguez was married to his former wife overlapped with the period in which Benites-Rodriguez had his relationship with Andres' mother.

On September 19, 2000, the INS served Benites-Rodriguez with a notice to appear.  The notice charged Benites-Rodriguez with removability as an alien present in the United States without being admitted or paroled, pursuant to INA Section 212(a)(6)(A)(I), 8 U.S.C. § 1182(a)(6)(A)(I).  Benites-Rodriguez conceded removability, but applied for cancellation of removal.  He also claimed to be eligible to apply for suspension of deportation, despite the fact that IIRIRA had repealed that provision several years earlier.

The former suspension of deportation provision and the current cancellation of removal provision differ in several significant ways.  Under the former suspension of deportation statute, an alien against whom the INS had initiated deportation proceedings could apply for suspension of deportation if he had been continuously physically present in the United States for seven years, had been a person of good moral character during that period, and could show that deportation would impose a severe hardship upon himself or a spouse, parent, or child who is a citizen or lawful permanent resident of the United States.  8 U.S.C. § 1254 (repealed).  Under the current cancellation of removal statute, an alien against whom the INS has initiated deportation proceedings can apply for cancellation of removal if he has been continuously physically present in the United States for ten years, has been a person of good moral character during that period, has not been convicted of certain offenses, and can show that removal would impose an exceptional and extremely unusual hardship upon the alien's spouse, parent, or child, who is a

citizen of the United States or an alien lawfully admitted for permanent residence. 8 U.S.C. § 1229b(b)(1). In this case, Benites-Rodriguez sought relief under the suspension of deportation statute because it only requires him to show a severe hardship to himself, whereas the cancellation of removal statute requires an alien to show an exceptional and extremely unusual hardship to the alien's spouse, parent, or child, rather than to himself.

The immigration judge, however, only considered whether Benites-Rodriguez was eligible for cancellation of removal and did not consider whether Benites-Rodriguez would qualify for suspension of deportation. Benites-Rodriguez had argued that he became eligible for suspension of deportation on October 26, 1996, about six months before the cancellation of removal statute became active, because, on that date, he had been in the United States for seven years. The immigration judge held that she had no jurisdiction to consider that argument because it was constitutional in nature.

The immigration judge also found that Benites-Rodriguez did not satisfy the requirements for cancellation of removal because his removal would not result in "exceptional and extremely unusual hardship" to Andres, Benites-Rodriguez's child, or any other American citizen or lawful permanent resident. Benites-Rodriguez presented no evidence to establish any type of close or ongoing relationship, other than financial, between himself and his son Andres, especially considering that Benites-Rodriguez had not seen his son in one-and-a-half years and he did not even know his son's address. Benites-Rodriguez also presented no evidence to demonstrate that he would be unable to secure employment in Peru that would not allow him to continue his child support payments. Moreover, even if he could not afford those payments, Benites-Rodriguez could not show that his failure to send Andres' mother $25 per month in child support would

create an exceptional and extremely unusual hardship for Andres.  Additionally, the immigration judge also expressed substantial concern about whether Benites-Rodriguez satisfied the good character requirement because he purchased and used a fraudulent Social Security card.

Benites-Rodriguez appealed the immigration judge's decision to the BIA.  On May 1, 2002, the BIA denied his appeal.  On May 29, 2002, Benites-Rodriguez filed a petition for review of the BIA's decision.  The Second Circuit Court of Appeals transferred the case to this district.  It instructed this court to "construe Petitioner's submissions as a petition brought pursuant to 28 U.S.C. § 2241 and address whether the BIA erred in failing to consider whether Petitioner was entitled to suspension of deportation under former 8 U.S.C. § 1254; *cf. Restrepo v. McElroy*, 369 F.3d 627, 638-39 (2d Cir. 2004)."  Mandate (doc. #27) (November 15, 2004).

**II.     Discussion**

Benites-Rodriguez raises two issues.  First, Benites-Rodriguez argues that denying him suspension of deportation relief would grant an impermissibly retroactive effect to IIRIRA.  Second, Benites-Rodriguez argues that the immigration judge erred when she denied his petition for cancellation of removal.

> A.     <u>Did the Immigration Judge Grant an Impermissibly Retroactive Effect to IIRIRA When She Found That Benites-Rodriguez Was Not Eligible for Suspension of Deportation?</u>

In determining whether the application of a statute is impermissibly retroactive, the Supreme Court has observed that "[i]ndividuals should have an opportunity to know what the law is and to conform their conduct accordingly." *Landgraf v. USI Film Productions*, 511 U.S. 244, 265 (1994).  The *Landgraf* decision provides guidance for determining whether the application of a statute is impermissibly retroactive.  A court must first "determine whether

Congress has expressly prescribed the statute's proper reach.  If Congress has done so, of course, there is no need to resort to judicial default rules." *Id*. at 261-62.  If Congress has not prescribed the statute's proper reach, however, the court must "determine whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id*. at 262.  Finally, if the statute would operate retroactively, it is presumed not to govern "absent clear congressional intent favoring such a result." *Id*. at 262.

The Second Circuit, in *Karageorgious v. Ashcroft*, 374 F.3d 152 (2d Cir. 2004), considered a similar, although not identical, issue to the one presented here.  Specifically, the *Karageorgious* Court addressed whether the current cancellation of removal statute was impermissibly retroactive as applied to aliens who sought relief under the former suspension of deportation provision before Congress passed IIRIRA.  Karageorgious and his son, both aliens from Greece, petitioned the INS to grant them suspension of deportation.  The Karageorgiouses petitioned the INS on March 28, 1997, shortly before IIRIRA was to take effect on April 1, 1997.  At that time, the INS had not yet initiated deportation proceedings against them. *Id*.  The petitioners made the request prematurely because they could only show hardship to themselves, which was sufficient under the former suspension of deportation statute, and could not show hardship to an American citizen or lawful permanent resident, as required by the post-IIRIRA cancellation of removal statute. *Id*.  The *Karageorgious* Court held that the former suspension of deportation statute did not apply because the petitioners were not eligible for relief under that statute until they were "deportable," which did not occur until after the INS initiated proceedings against them. *Id*. at 157.  The Court reasoned that "the regulations that formerly governed

applications for suspension of deportation provided that an application for suspension of deportation may be made only during the deportation hearing." *Id*. (citing 8 C.F.R. § 242.17(e)). Certain formal procedures that only occur during deportation proceedings must take place "before an alien is deemed deportable," and thus "an alien is not deportable for section 244(a)(1) purposes in the absence of a deportation proceeding and a finding of deportability." *Id*. The Court concluded that "petitioners, who were not in deportation proceedings at the time they filed their application, were not statutorily eligible for suspension of deportation." *Id*.

> The Second Circuit recently explained that:
>
>> in *Karageorgious v. Ashcroft*, we upheld the retroactive application of IIRIRA's elimination of suspension of deportation relief. Specifically, we held that for those persons who had not forfeited substantive rights (for example, by pleading guilty to a felony) based on some expectation of eligibility for immigration benefits under the pre-IIRIRA regime, repeal of suspension of deportation had no impermissible retroactive effect "because it [did] not attach any new legal consequences to petitioners' pre-IIRIRA conduct."

*Arenas-Yepes v. Gonzales*, 421 F.3d 111, 117 (2d Cir. 2005). The Second Circuit is not alone in holding that the former suspension of deportation provision does not apply to individuals against whom the INS had not initiated deportation proceedings until after April 1, 1997, the date IIRIRA became effective. *See Jimenez-Angeles v. Ashcroft*, 291 F.3d 594, 597 (9th Cir. 2002) (holding that "IIRIRA includes transitional rules providing that, for the most part, the new provisions of IIRIRA do not apply to aliens against whom deportation proceedings were commenced prior to its effective date. Therefore, an alien may apply for the pre-IIRIRA remedy of suspension of deportation if deportation proceedings against her were commenced before April 1, 1997. However, if an alien's case is commenced after April 1, 1997, it appears to be

controlled by the new, permanent provisions of IIRIRA."); *see also Dandan v. Ashcroft*, 339 F.3d 567, 575 (7th Cir. 2003) (holding that "IIRIRA and its accompanying regulations make clear that [the petitioner] is and was, after April 1, 1997, ineligible for suspension of deportation.").

In this case, Benites-Rodriguez asserts that the pre-IIRIRA law should apply to him because he became eligible for suspension of deportation on October 26, 1996, seven years after he illegally entered the United States, even though the INS did not commence deportation proceedings against him until September 2000 at the earliest. Petitioner's Brief p. 8. Benites-Rodriguez's argument, however, is soundly foreclosed by *Karageorgious* and *Arenas-Yepes*. If the petitioners in *Karageorgious*, who actually sought relief under the previous suspension of deportation statute before IIRIRA repealed the provision in 1997, were not eligible for suspension of deportation, then Benites-Rodriguez, who did not apply for suspension of deportation until several years after IIRIRA changed the law, is certainly not eligible.

The Second Circuit's decision in *Restrepo* does not compel a different result. In *Restrepo*, the Second Circuit considered the retroactive effect of the Antiterrorism and Effective Death Penalty Act's ("AEDPA") exclusion of aliens convicted of "aggravated felonies" from eligibility for discretionary relief from deportation. *Restrepo*, 369 F.3d at 629-30. Before Congress enacted AEDPA, then-existing immigration law created an incentive for aliens who had committed felonies and were deportable to wait as long as possible to file for relief from deportation because the alien's chances for discretionary relief would increase if the alien could show he had strong ties to the community. Restrepo had committed a drug-related crime before Congress enacted AEDPA, but applied for relief from deportation after AEDPA became effective. *Id.* at 630. Restrepo argued that it would be impermissible to exclude him from

applying for discretionary relief, despite AEDPA's new provisions, because he gave up something of value in reliance upon previous law, namely, the opportunity to apply for discretionary relief. The *Restrepo* Court held that it is not per se impermissibly retroactive to apply AEDPA's exclusion to all aliens with pre-AEDPA aggravated felonies, but determined that it is impermissibly retroactive to apply AEDPA's exclusion to aliens who decided to forgo their opportunity to file for relief from deportation based upon the incentives created by then-existing law. *Id*. at 634-35. The *Restrepo* Court reasoned further that to apply the exclusions retroactively would upset the aliens' settled expectations and cause the aliens to sacrifice something of value, namely, the opportunity to apply for discretionary relief.[2] *Id*. at 635.

The circumstances in *Restrepo* are easily distinguishable from the circumstances presented here. In *Restrepo*, the petitioner was eligible to apply for relief from deportation but made a strategic decision, in reliance on the incentives created by then-existing law, to forgo his right to file for relief from deportation. In this case, however, Benites-Rodriguez was never eligible to apply for suspension of deportation. Unlike Restrepo, Benites-Rodriguez did not forgo any opportunity for relief in reliance on the suspension of deportation provision.[3] In this case, the passage of IIRIRA did not attach any new legal consequences to any past event in

---

[2] The *Restrepo* Court ultimately remanded the case to the district court to determine "whether an alien such as Petitioner must make an individualized showing that he decided to forgo an opportunity to file for 212(c) relief in reliance on his ability to file at a later date . . . or whether . . . a categorical presumption of reliance by any alien who might have applied for 212(c) relief when it was available, but did not do so, is more appropriate." *Id*. at 639.

[3] Although Benites-Rodriguez could not have relied on the suspension of deportation statute to his detriment because he was never eligible to apply for relief under pre-IIRIRA law, I still believe, as I wrote in *Thom v. Ashcroft*, 369 F.3d 158 (2d Cir. 2004), that detrimental reliance is not the *sine qua non* of retroactivity analysis in immigration cases. *Id*. at 172 (Underhill, J. dissenting).

Benites-Rodriguez's immigration experience, such as an act he took or a decision he made. Rather, when Benites-Rodriguez first became eligible to seek relief from removal, the legal context had simply changed from what it had earlier been.

> B. Did the Immigration Judge Err When She Denied Benites-Rodriguez's Petition for Cancellation of Removal?

To qualify for cancellation of removal, an alien must show, among other things, "that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." 8 U.S.C. § 1229b(b)(1)(D). Under the less favorable cancellation of removal provision, an alien must prove that his citizen relatives would suffer hardship "substantially beyond that which would ordinarily be expected to result from the alien's deportation." *De Jesus Chete Juarez v. Ashcroft*, 376 F.3d 944, 949 (9th Cir. 2004). In this case, Benites-Rodriguez's only citizen relative is his son, Andres, whom he fathered out-of-wedlock while married to another woman. Benites-Rodriguez is largely absent from Andres' life. He testified that he had not seen Andres for a year-and-a-half before his deportation proceedings and did not even know where Andres lived. He pays only nominal child support to Andres' mother, which he sends to a bank in Hartford. Because Benites-Rodriguez's deportation would cause Andres hardly any hardship whatsoever, the immigration judge did not err when she found that Benites-Rodriguez's deportation would not cause Andres an "exceptional and extremely unusual hardship."

**III.   Conclusion**

In conclusion, because the INS did not initiate deportation proceedings against Benites-Rodriguez until several years after IIRIRA repealed the former suspension of deportation statute,

Benites-Rodriguez was never eligible for relief under that statute.  Therefore, the immigration judge and the BIA did not err when they failed to consider whether Benites-Rodriguez was entitled to relief under that former statute.  Moreover, because Benites-Rodriguez's deportation will not create an exceptional and extremely unusual hardship to his son Andres, the immigration judge and the BIA did not err in finding that Benites-Rodriguez did not qualify for cancellation of removal.  Construing Benites-Rodriguez's submissions as a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, the petition is DENIED.  The clerk shall close the file.

It is so ordered.

Dated at Bridgeport, Connecticut, this 29th day of November 2006.

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge